AMERICAN SURETY CO. OF NEW YORK, peticionaria, *v.* TRI-
BUNAL SUPERIOR DE PUERTO RICO, SALA DE SAN JUAN,
HON. HECTOR RUIZ SOMOHANO, JUEZ, demandado; SE-
CRETARIO DE HACIENDA y MARYLAND CASUALTY CO., inter-
ventores.

*Número:* O-69-16      *Resuelto:* 18 de junio de 1969

*Castro & Castro*, abogados de la peticionaria; *Rivera Zayas, Rivera Cestero & Rúa*, abogados de la Maryland Casualty Company; *J. F. Rodríguez Rivera, Procurador General Interino, y Elpidio Arcaya, Procurador General Auxiliar*, abogados del Secretario de Hacienda.

Sala Primera integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Blanco Lugo, Rigau y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

Como cesionaria de las sumas adeudadas por concepto de trabajos realizados por Inter American Builders, Inc., para la construcción de la Urbanización Dos Pinos y un edificio de usos múltiples en Hato Rey, la recurrente American Surety Company of New York comenzó en 26 de abril de 1962 una acción en cobro de dinero contra, entre otros, la Asociación de Maestros de Puerto Rico, dueña de las obras, y las empresas contratistas Southern Builders, Inc., Constructora de las Antillas, Inc., y sus dos afiliadas The Williams Co. y Constructora Dos Pinos, Inc., Inter American Builders, Inc., había subcontratado parte de la construcción de ambas obras. Cuatro años después, en 10 de octubre de 1966, el tribunal de instancia confirmó en todas sus partes un laudo rendido en 1 de junio de 1965 por los árbitros designados para entender en las distintas reclamaciones promovidas dentro del pleito, según suplementado por informes de 16 de septiembre de 1965, 29 de marzo de 1966 y 2 de mayo de 1966.

En virtud del laudo mencionado se estableció que la Asociación de Maestros de Puerto Rico adeudaba del precio contractual la suma total de $115,838.67, y que las empresas subcontratistas estaban obligadas a pagar $78,093.82 a American Surety Company of New York, como cesionaria

de la subcontratista Inter American Builders, Inc. En 8 de junio de 1967 la Asociación de Maestros consignó la suma indicada "sin perjuicio del derecho que sobre esta suma pueda tener el Estado Libre Asociado . . . ." Se refiere a tres órdenes de retención dictadas en 8 de julio de 1965, por vía de aseguramiento de sentencia, en pleitos incoados para el cobro de contribuciones sobre ingresos, por las cuales se le ordenó a dicha entidad que se abstuviera de transferir, entregar o pagar $8,000 a The Williams Co., Inc., $4,800 a Constructora de las Antillas, Inc., y $70,386.49 a Southern Builders, Inc., de los dineros que pudieren corresponderles en virtud del laudo arbitral.

En 14 de junio de 1967, la American Surety Co. of New York solicitó mediante moción la entrega de la suma de $78,093.82, importe de su acreencia conforme a los términos del laudo, a lo cual se opuso el Estado Libre Asociado fundándose en un alegado derecho preferente derivado de las órdenes de retención.

Mediante resolución de 3 de enero de 1969 el tribunal a quo, aplicando preceptos relativos a la concurrencia y prelación de créditos, sostuvo que el crédito del Estado gozaba de preferencia, (¹) y negó el retiro solicitado. Ignoró el planteamiento crucial sobre la naturaleza de la acción ejercitada por American Surety Co. of New York a tenor con las disposiciones del Art. 1489 del Código Civil, 31 L.P.R.A. sec. 4130. Al así hacerlo, incidió.

1. Como excepción al principio cardinal del derecho de obligaciones sobre el efecto de los contratos—sólo en-

---

(¹) Para ello determinó que ambos créditos—el de American Surety Co., que caracterizó como un crédito de materialista y operario; el del Estado Libre Asociado, por contribuciones *sobre ingresos*—no gozan de la preferencia especial establecida en los Arts. 1822, 1823 y 1824 del Código Civil, 31 L.P.R.A. secs. 5192, 5193 y 5194; y que por ser el del Estado anterior—8 de julio de 1965, fecha de la expedición de las órdenes de retención—al de la compañía aseguradora—que estimó era de la fecha en que el tribunal aprobó el laudo arbitral, 10 de octubre de 1966—tenía prelación en cuanto al pago.

tre los otorgantes y sus causahabientes, Art. 1209 del Código Civil, 31 L.P.R.A. sec. 3374—se consagra en el citado 1489, *supra*,(²) que los obreros y materialistas de una obra ajustada alzadamente por el contratista tienen acción contra el dueño de la obra hasta la cantidad que éste le adeude a aquél cuando se hace la reclamación. Conviene advertir de inmediato que no se trata de la acción de naturaleza eminentemente subrogatoria que a todos los acreedores reconoce el Art. 1064 del Código Civil, 31 L.P.R.A. sec. 3028, y que por sus propios términos, presupone la excusión de bienes del deudor.(³) Consideraciones de orden público—propiciar el pronto pago a quienes ponen su trabajo y materiales en una obra ajena—y de orden moral—evitar el enriquecimiento del dueño y el empresario mediante el fraude o confabulación —justifican la procedencia de esta acción. *C. Armstrong e Hijos* v. *Díaz*, 95 D.P.R. 819, 824–825 (1968).(⁴)

■ Manresa, en su glosa sobre el Art. 1597 del Código Civil español, que corresponde al 1489 de Puerto Rico, dice que se concede *"una acción directa"* contra el dueño hasta la cantidad que éste adeude al momento de la reclamación. No obstante, reconoce que no se ha concedido a los obreros o materialistas privilegio alguno, y que está sujeta a las vicisitudes que en cuanto a la disposición de su crédito puede

(²) "Los que ponen su trabajo y materiales en una obra ajustada alzadamente por el contratista, no tienen acción contra el dueño de ella sino hasta la cantidad que éste adeude a aquél cuando se hace la reclamación."

(³) "Los acreedores *después de haber perseguido los bienes* de que esté en posesión el deudor para realizar cuanto se les debe, pueden ejercitar todos los derechos y acciones de éste con el mismo fin, exceptuando los que sean inherentes a su persona . . . ."

Manresa apunta que no puede entenderse que el Art. 1597 (1489 de Puerto Rico) es una mera "reproducción completamente ociosa y baldía" del 1111 (1064 de Puerto Rico). *Comentarios al Código Civil Español* (5a. ed. 1950), vol. X, pág. 934.

(⁴) Por curiosidad, obsérvese que en este caso la Asociación de Maestros era también la dueña de la obra y que se trataba de una reclamación de un materialista del empresario.

456

hacer el contratista. *Comentarios al Código Civil Español* (5a. ed. 1950), vol. X, págs. 934–935. La doctrina española es unánime en caracterizar la acción que discutimos como directa. Scaevola, *Código Civil* (ed. 1915), t. XXIV, págs. 136–150; Puig Peña, *Tratado de Derecho Civil Español*, t. IV, vol. II, pág. 304; Valverde, *Tratado de Derecho Civil Español*, 4a. ed. 1937), t. III, págs. 599–600; De Diego, *Instituciones de Derecho Civil Español*, t. II, pág. 326; Santamaría, *Comentarios al Código Civil*, t. II, pág. 641; Traviesas, *El Contrato de Arrendamiento*, R.D.P., t. VI, pág. 44; Bonet Ramón, *Código Civil Comentado*, (ed. Aguilar, 1962), pág. 1270. Y la francesa—de cuya legislación provino el precepto español, aunque limitado a las reclamaciones de los obreros —se pronuncia en idéntico sentido. Aubry y Rau, *Droit Civil Francais*, (6a. ed.) t. V, pág. 420; Colin y Capitant, *Curso Elemental de Derecho Civil*, (ed. Reus 1955), t. 4.°, págs. 504–505; Josserand, *Derecho Civil*, t. II, vol. II, pág. 233; Planiol y Ripert, *Tratado Práctico de Derecho Civil Francés*, t. XI, pág. 213; Laurent, *Principios de Derecho Civil Francés*, t. XXVI, pág. 95 y ss.; Ripert y Boulanger, *Traité de Droit Civil*, t. III, pág. 684.

Este carácter directo de la acción produce el importantísimo efecto de sustraer el importe de lo reclamado por el obrero o materialista de las reclamaciones de otras acreedores del contratista, pues desde el instante en que se hace la reclamación al dueño, éste se convierte en deudor de los obreros y materialistas del empresario. Scaevola, *op. cit.*, a la pág. 138, dice al resumir la jurisprudencia francesa sobre el particular ". . . desde que el dueño es demandado por los obreros, se convierte en deudor de éstos, dejando de serlo del empresario, hasta el punto de que los acredores particulares de éste no podrán concurrir con los operarios en la suma debida por el dueño", y equipara la posición del materialista a la de un edificante de buena fe en los casos de accesión. Al considerar el caso de quiebra o concurso del

contratista, otro tanto señala Manresa, *op. cit.*, pág. 935, al decir que "Si antes de tal declaración los que pusieron su trabajo o materiales en la obra habían demandado ya al dueño, este crédito no irá a la masa, porque desde el momento de la demanda se debe estimar que el dueño a quien debe es a sus demandantes y no al contratista." [5]

■ Aplicando los principios expuestos a los hechos que consideramos forzoso es concluir que la peticionaria se convirtió en acreedora directa de los dueños de las obras desde el instante mismo en que incoó su reclamación judicial en 26 de abril de 1962, y que su crédito no está sujeto a los vaivenes de las responsabilidades del contratista por otros conceptos. Desde la fecha indicada la Asociación de Maestros se convirtió en deudora de American Surety Co. of New York. No se trata de una situación en que sea necesario determinar sobre la preferencia y prelación de créditos en relación con un mismo deudor. Por tanto, la American Surety Co. of New York tenía derecho a cobrar en 26 de abril de 1962 las cantidades que se le adeudaban por la empresa contratista y sus subsidiarias y afiliadas hasta la cantidad que la dueña de las obras adeudaba a éstas a esa fecha.

Podríamos disponer del recurso con lo ya expuesto. Sin embargo, ciertas aclaraciones están en orden para una disposición final adecuada en su día de la controversia entre las partes. Hemos examinado el laudo de arbitraje y del mismo aparece que *bajo los términos de los contratos de construcción*, a la Asociación de Maestros le correspondía pagar a la contratista Southern Builders, Inc., y sus subsidiarias la suma total de $91,137.26, [6] y que éstas adeudaban

---

[5] Si a igual solución se llegará en la aplicación de la Ley de Quiebras federal, *quaere*.

[6] (A) Proyecto edificio usos múltiples
  1. Balance adeudado a Southern Builders, Inc.     $50,391.73
  (B) Proyecto Urbanización Dos Pinos
  1. Balance adeudado a The Williams Co.     35,764.87
  2.     "     "     " Constructora Dos Pinos, Inc.     8,118.36

$63,051.21 a la American Surety Co.(⁷) Los intereses que se conceden en el laudo no pueden considerarse a los fines de fijar las sumas que contractualmente adeudaba la dueña de las obras a los contratistas y a la cesionaria de la subcontratista.(⁸)

*Se revocará la resolución dictada por el Tribunal Superior, Sala de San Juan, en 3 de enero de 1969, y se devolverá el caso para procedimientos ulteriores consistentes con esta opinión.*

|  |  |  |  |
|---|---|---|---|
| 3. " " " Constructora Antillas |  |  | (3,137.70) |
| Total: |  |  | $91,137.26 |

(⁷) (A) Proyecto edificio usos múltiples
    1. Balance adeudado por Southern Builders ........ $ 9,312.96
  (B) Proyecto Urbanización Dos Pinos
    1. Balance adeudado por Constructora Antillas ... 14,415.66
    2. " " " The Williams Co. .... 32,422.25
    3. " " " Constructora Dos Pinos 6,900.34

        Total: ........................................... $63,051.21

(⁸) Por supuesto que la Asociación de Maestros viene obligada a pagar intereses legales sobre $63,051.21 a American Surety Co. of New York desde el 26 de abril de 1962 hasta el 8 de junio de 1967, fecha en que consignó el importe del laudo arbitral, por 5 años, 1 mes y 12 días, o sea $19,798.07.

Los intereses devengados hasta el 26 de abril de 1962 sobre $91,137.26, importe de lo adeudado a las contratistas, corresponden a éstas, así como los que se devengaron sobre $28,086.05 desde dicha fecha hasta la de la consignación.