## En el Tribunal Supremo de Puerto Rico

| | |
|---|---|
| JUNCO STEEL CORPORATION<br><br>Demandantes<br><br>V.<br><br>C.E. DESIGN DEVELOPMENT, ETC.<br><br>Demandados<br><br>NATIONAL INSURANCE COMPANY<br><br>Demandante contra coparte-<br><br>Recurrida<br><br>ESTADO LIBRE ASOCIADO DE P.R. Y OTROS<br><br>Demandado contra Coparte-<br><br>Peticionario | Certiorari<br><br>**99TSPR67** |
| | |

Número del Caso: **CC-98-38**

Abogados de la Parte Peticionaria:

    Hon. Carlos Lugo Fiol,

Procurador General

    Lic. Lizette Mejías Avilés

Procuradora General Auxiliar

Abogados de la Parte Recurrida National Insurance Company:

    Virgilio Ramos González

    (Bufete Virgilio Ramos Gonzlez)

Abogados de Junco Steel Corp:

Lic. César Matos Bonet

Tribunal de Instancia: Subsección de Distrito, Sala Superior de San Juan

Juez del Tribunal de Primera Instancia:

**Hon. Luis A. Pérez Caraballo**

Tribunal de circuito de Apelaciones: I, San Juan, Panel II

Juez Ponente:

**Hon. Miranda de Hostos**

Panel integrado por: Pres. Jueza Alfonso de Cumpiano y los Jueces Giménez Muñoz y Miranda de Hostos

Fecha: 5/3/1999

Materia: **Cobro de Dinero**

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

Junco Steel Corporation

Demandantes

vs.  CC-98-38 Certiorari

C.E. Design Development,

Etc.

Demandados

National Insurance Company

Demandante Contra Coparte

Apelada Recurrida

vs.

Estado Libre Asociado de P.R.

Y Otros

Demandado contra Coparte

Apelante Peticionario

**PER CURIAM**

San Juan, Puerto Rico, a 3 de mayo de 1999.

I. El 28 de enero de 1992, el Estado Libre Asociado de Puerto Rico (E.L.A.) y la Oficina para el Mejoramiento de las Escuelas Públicas de Puerto Rico (OMEP) suscribieron dos contratos para la rehabilitación de varias escuelas en Ponce, con el contratista CE Design Development Contractors (DECON). El término de duración de los contratos era de ciento veinte (120) días, que vencía el 27 de mayo de 1992. Conforme a los dos contratos referidos, la OMEP pagaría un total de $919,217.12 por los servicios de rehabilitación prestados por el contratista. La OMEP pagaría lo adeudado a DECON una vez hubiese dado la aprobación final de las obras, y luego de haber recibido del contratista toda la documentación correspondiente requerida en los contratos para fines de su liquidación.

Los contratos disponían que OMEP podía efectuar pagos parciales a DECON, antes de que se terminasen todas las obras, según partes de éstas fuesen completadas. Para ello, se requería una certificación respecto a la parte de las obras completadas, recomendada por

el inspector del proyecto, y aprobada por el Director Ejecutivo de OMEP.

Los contratos disponían de forma clara y expresa **que OMEP retendría un diez por ciento (10%) de cada uno de tales pagos parciales para garantizar el cumplimiento del contrato**. Al concluirse todas las obras, y una vez emitida por OMEP la aceptación final de los servicios rendidos por DECON, OMEP procedería a la liquidación del contrato y pagaría entonces las cantidades retenidas de los pagos parciales. Para obtener el reembolso de lo retenido en tales pagos, DECON debía presentar un certificado de que los materiales de la obra habían sido pagados, la liquidación de la póliza correspondiente del Fondo del Seguro del Estado, y el relevo de las compañías de seguro.

Finalmente, se pactó, además, el pago de una multa de $100 como penalidad por cada día de retraso en la entrega de las obras totalmente terminadas de acuerdo a las especificaciones del contrato, y se incluyó una disposición a los efectos de que **toda fianza de cumplimiento cubriría el pago de la cláusula penal aludida**.

El 14 de abril de 1994, la Junco Steel Corp. (Junco) presentó una demanda en cobro de dinero por $9,265.44, por concepto de materiales de construcción

suplidos para la obra referida pero no pagados aún. Incluyó como demandados al contratista DECON, al dueño de la obra E.L.A. y OMEP, y a la compañía afianzadora de las obras de construcción, la National Insurance Co. (National).

El 11 de octubre de 1995, el Tribunal de Primera Instancia, Subsección de Distrito, Sala de San Juan, dictó sentencia parcial contra DECON. Posteriormente, el E.L.A. presentó una solicitud de sentencia sumaria y alegó que National debía responder por la reclamación de Junco, en virtud del contrato de fianza que había suscrito para garantizar inter alia el pago de reclamaciones de suplidores. National replicó a dicha solicitud. Adujo que el E.L.A. adeudaba a DECON dinero suficiente para cubrir el pago de las cantidades que reclamaba Junco. También alegó que si era obligada a satisfacer las sumas que reclamaba Junco, el E.L.A. vendría obligado a resarcirla.

El E.L.A. presentó entonces una moción de sentencia sumaria suplementaria y alegó que DECON había incumplido con el contrato de obra, debido a que había abandonado el proyecto en diciembre de 1992, por lo que OMEP tuvo que contratar otra compañía para terminar las obras. Indicó que OMEP le tenía retenido a DECON la cantidad de $25,840.18, equivalente al diez porciento (10%) del balance de los contratos, conforme a una certificación suscrita el 31 de julio de 1996 por la Gerente Financiera de OMEP. Señaló también que conforme a una declaración jurada suscrita el 27 de diciembre de 1996 por el Oficial de Contabilidad de la OMEP, las penalidades por las demoras incurridas por DECON ascendían a $28,900.

Eventualmente, Junco y National suscribieron un escrito titulado "Estipulación de Desistimiento Voluntario con Perjuicio", mediante el cual National le pagó a Junco una cantidad de dinero a cambio de que ésta le cediera la causa de acción, reclamaciones y derechos que pudiera tener contra DECON y el E.L.A. en relación con este caso. Como resultado de esta estipulación, se eliminó a Junco como demandante en el pleito y la sustituyó National. Además, Junco desistió voluntariamente y con perjuicio de cualquier reclamación que tuviera contra National.

El 17 de noviembre de 1997, el Tribunal de Primera Instancia determinó que no existía controversia real sustancial sobre los hechos materiales y dictó sentencia sumaria condenando al E.L.A. a pagar a National los $9,265.44 que ésta pagó a Junco, más intereses a razón de cinco porciento (5%) a partir de la fecha de presentación de la demanda. El E.L.A. presentó un escrito de apelación ante el Tribunal de Circuito de Apelaciones. El foro apelativo confirmó la sentencia apelada.

Inconforme con esta determinación, el E.L.A. interpuso el presente recurso oportunamente y planteó lo siguiente:

> Erró el Tribunal de Instancia al condenar al E.L.A. a resarcir a National la suma pagada a la demandante Juncos Steel Corporation.

> Erró el Tribunal de Instancia al condenar al E.L.A. al pago de intereses al 5%, computados a partir del 14 de

abril de 1994, fecha de radicación de la demanda.

El 17 de abril de 1998, expedimos el recurso referido para revisar el dictamen del foro apelativo. El E.L.A. presentó su alegato el 25 de junio de 1998; y la parte recurrida presentó el suyo el 7 de agosto de 1998. Con el beneficio de ambas comparecencias, pasamos a resolver.

II. El Artículo 1489 del Código Civil, 31 L.P.R.A. sec. 4130, establece que los que realizan un trabajo u ofrecen materiales en una obra ajustada alzadamente por el contratista tienen una acción contra el dueño de la obra, hasta la cantidad que éste adeude al contratista cuando se hace la reclamación. Hemos resuelto que en tales situaciones, el dueño de la obra se convierte en deudor de los materialistas u obreros desde el mismo instante en que se hace la reclamación a éste, ya sea mediante reclamación extrajudicial o mediante la presentación de una demanda en cobro de dinero. Goss, Inc. v. Dycrex Const. & Co., S.E., opinión del 9 de julio de 1996, 141 D.P.R. ___, 96 JTS 103; Armstrong, Etc. v. Inter-Amer. Builders, Inc., 98 D.P.R. 734 (1970); Amer. Surety Co. v. Tribunal Superior, 97 D.P.R. 452 (1969). Se trata de una excepción al principio de que los contratos solamente tienen efecto entre los otorgantes y sus causahabientes. Goss, Inc. v. Dycrex Const. & Co., S.E., supra, a la pág. 1385; R. Román & Cía v. J. Negrón Crespo, Inc., 109 D.P.R. 26, 30 (1979).

El derecho que posee el materialista contra el dueño de la obra para cobrar lo que el contratista le adeuda por concepto de materiales suplidos y usados en la obra tiene dos limitaciones. Primero, que la suma reclamada, ya sea mediante acción judicial o extrajudicial, no podrá

exceder la cantidad que el dueño de la obra le adeude al contratista conforme al contrato de construcción. Segundo, que el suplidor no adquiere ante el dueño de la obra más derechos que los que tenía el contratista. Goss, Inc. v. Dycrex Const. & Co., S.E., supra. Por ello, la cantidad adeudada por el dueño de la obra está sujeta a liquidación por razón de reajustes o posibles reclamaciones recíprocas que surgen en relación con la obra contratada entre el contratista y el dueño de ésta. Armstrong, Etc. v. Inter-Amer Builders, supra, a la pág. 741; reafirmado en Goss, Inc. v. Dycrex Const. & Co., S.E., supra. En R. Román & Cía v. J. Negrón Crespo, supra, enfatizamos que la acción concedida por el citado Artículo 1489 no supone una modificación de la situación sustantiva previa que rigiera las relaciones entre el dueño de la obra y el contratista.

III.   A la luz de los conocidos principios jurídicos reseñados antes, pasemos a considerar la situación ante nos.

El foro apelativo acogió la tesis de National de que para la fecha en que Junco presentó su demanda en cobro de los materiales que había suplido para las obras en cuestión, el E.L.A. no le había hecho a DECON ninguna reclamación formal sobre su incumplimiento de los contratos ni de las penalidades correspondientes. Según este razonamiento, como no se habían liquidado los contratos a esa fecha, supuestamente no procedía la imposición de las penalidades pactadas. Por ende, resolvió el foro apelativo, el E.L.A. estaba obligado a pagarle al materialista lo que el contratista le debía a éste, de los fondos del contratista que el E.L.A. retenía. Erró

el Tribunal de Circuito de Apelaciones al resolver de este modo.

Debe notarse que al momento en que el materialista hizo su reclamación judicial, el 14 de abril de 1994, ya DECON había incurrido en demoras extensas, e incluso había abandonado las obras desde hacía 17 meses. OMEP no había liquidado los contratos con DECON sencillamente porque no había nada que liquidar. Es decir, al momento de la reclamación de Junco, **DECON no tenía derecho alguno a los $25,840.18 que OMEP le tenía retenidos**. Conforme a los claros términos de la Cláusula Decimoquinta de los contratos, OMEP sólo estaba obligada a pagar la cantidad retenida al contratista **"después de la aprobación final de las obras y recibida toda la documentación requerida a el contratista para fines de la liquidación"**. Al momento de la demanda de Junco, pues, **DECON no había recibido ni habría de recibir la aprobación final de las obras**. Tampoco había sometido la documentación aludida. Por tanto, OMEP no venía obligado a pagarle la cantidad retenida.

Por otro lado, también es claro que al momento de la demanda de Junco, DECON le debía a OMEP $28,900 como penalidad por las demoras incurridas por el contratista. La cláusula Décimo Sexta de los contratos en cuestión claramente disponía que el contratista incurriría en una penalidad de $100 "por cada día de demora en la entrega del proyecto totalmente terminado", y que "[d]icha penalidad comenzará a ser computada a partir del período acordado en la Cláusula Segunda anterior", que era el 27 de mayo de 1992. **En ningún lugar de los contratos se disponía que la penalidad era efectiva sólo desde el**

**momento en que se reclamaba**. Por el contrario, de los propios términos de éstos, es claro que dicha penalidad comenzaba a ser efectiva desde que se incurría en la demora.

En resumen, pues, en virtud de los claros términos de los contratos en cuestión, al momento que el materialista le reclamó al dueño de la obra por lo que aquél había suplido a dicha obra, el dueño de ésta **nada debía al contratista**. Por el contrario, era el contratista el que estaba endeudado con el dueño de la obra. Como conforme al citado Artículo 1489, la responsabilidad del dueño de la obra hacia el materialista es únicamente hasta la cantidad que el dueño le daba al contratista, en el caso de autos OMEP no tenía nada que pagar a Junco. El suplidor no adquiere ante el dueño de la obra más derechos que los que tenía el contratista. Armstrong, Etc. v. Inter-American Builders, Inc., supra.

Es menester enfatizar que la situación del caso de autos ha estado prevista en anteriores pronunciamientos nuestros. Así pues, en R. Román & Cía v. Negrón Crespo, Inc., supra, a las págs. 32-33, citamos a M. Scaevola para indicar lo siguiente:

> "... Si la obra es repelida por no reunir las condiciones estipuladas, al no nacer la obligación de pago, nada deberá el dueño al contratista, y nada tampoco a los que cooperaron a su ejecución con su trabajo y materiales, por contratos directos con el segundo."

Allí, a las págs. 31-32, citamos también a R. de A. Yagüez, <u>Los Créditos Derivados del Contrato de la Obra</u>, Madrid (1969) para indicar asimismo que al precisar el crédito del contratista frente al dueño de la obra, para así determinar el <u>quantum</u> a que tendría derecho el materialista que reclama del dueño de la obra, procede la disminución correspondiente por razón de la ejecución defectuosa o incompleta por el contratista de la obra a él encomendada.

En derecho es claro, pues, que en el caso de autos el dueño de la obra nada debía al contratista y, por ende, nada podía reclamarle el materialista, ni su cesionario la National Ins. Co. Erraron los foros de instancia y apelativo al resolver de modo contrario.

IV. A la luz de lo anterior, procede que se revoquen las sentencias de los foros referidos y que en su lugar se dicte sentencia a favor del Estado Libre Asociado, para desestimar la reclamación incoada contra dicha parte.

## EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Junco Steel Corporation

Demandantes

vs. CC-98-38 Certiorari

C.E. Design Development,

Etc.

Demandados

National Insurance Company

Demandante Contra Coparte

Apelada Recurrida

vs.

Estado Libre Asociado de P.R.

Y Otros

Demandado contra Coparte

Apelante Peticionario

**SENTENCIA**

San Juan, Puerto Rico, a 3 de mayo de 1999.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente, se revocan las sentencias del Tribunal de Circuito de Apelaciones, Circuito Regional de San Juan y del Tribunal de Primera Instancia, Subsección de Distrito, Sala de San Juan; y en su lugar se dicta sentencia a favor del Estado Libre Asociado de Puerto Rico, para desestimar la reclamación incoada contra dicha parte.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Hernández Denton concurre sin opinión escrita. El Juez Presidente señor Andréu García no intervino.

Isabel Llompart Zeno

Secretaria del Tribunal Supremo