# 2006 DTA 122

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE GUAYAMA**
**PANEL XI**

J.R. INSULATION SALES & SERVICE, INC.
Recurrida

v.

COMBUSTION ENGINEERING CARIBE, INC.
Recurrente

---------------------------

JR INSULATION SALES AND SERVICES, INC.
Recurrida

v.

COMBUSTION ENGINEERING CARIBE, INC.
Recurrente

Núms. Cons. KLCE-06-00872 / KLCE-06-00992

San Juan, Puerto Rico, a 9 de octubre de 2006

Panel integrado por su Presidenta, la Juez Pesante Martínez,
la Juez Feliciano Acevedo y el Juez Escribano Medina

Pesante Martínez, Juez Ponente

**TEXTO COMPLETO DE LA RESOLUCIÓN**

Comparecen ante nos, Duke/Fluor Daniel Caribbean, S.E. (Duke) y AES Puerto Rico Limited Partnership (AES) (juntos componen la parte peticionaria), y mediante sendos escritos de *certiorari*, nos solicitan la revisión de ciertos dictámenes; a saber, uno de 22 de mayo de 2006, notificado el 25 de mayo de 2006, y el otro, de 19 de junio de 2006, notificado el 26 de junio de 2006. Ambas determinaciones fueron dictada por el Hon. Eduardo Grau Acosta, Juez del Tribunal de Primera Instancia (TPI), Sala Superior de Guayama. Las mismas tuvieron el efecto de declarar no ha lugar las respectivas solicitudes de sentencia sumaria que presentaron, ante dicho foro y mediante moción, Duke y AES. Sus peticiones iban dirigidas a lograr la desestimación de la demanda que presentó en su contra J.R. Insulation Sales & Services, Inc. (JR o la parte recurrida).

Inconformes, Duke y AES acudieron ante nos, en síntesis, señalándole como error al TPI el que denegara su solicitud de resolver el caso vía sentencia sumaria, aUn cuando a juicio de aquéllos, se cumplían los requisitos de la Regla 36.3 de Procedimiento Civil.

Por su parte, tanto JR como la aseguradora, MAPFRE-PRAICO Insurance Company, comparecieron presentando su oposición a los recursos de *certiorari* que presentaron Duke y AES. Lo anterior, no sin antes haber solicitado JR la consolidación de los recursos en cuestión ante este Tribunal. Atendida su solicitud, accedimos a consolidar los casos con designaciones alfanuméricas KLCE-06-00872 y KLCE-06-00992. Lo anterior se hizo constar en resoluciones nuestras de 23 de agosto de 2006 y 13 de septiembre de 2006.

Luego de haber examinado los múltiples escritos presentados por las partes, incluyendo alegatos y réplicas, y habiendo analizado la prueba documental que obra en el expediente, denegamos la expedición de los autos solicitados.

## I

Esbozamos a continuación un breve resumen de las incidencias procesales y de la controversia básica de este caso.

El 29 de diciembre de 2003, JR presentó una demanda sobre incumplimiento de contrato, dolo, cobro de dinero y daños contra Combustion Engineering Caribe, Inc. (CE), Alstom Power, Inc. (API), Duke y AES. En lo pertinente, JR hizo una reclamación a Duke y a AES en cobro por servicios y materiales que prestó y utilizó en un proyecto de construcción de una planta termoeléctrica en Guayama.

Del expediente de este caso surge que AES era el dueño de la obra antes aludida. Mientras, Duke fue contratado por AES como contratista general o principal de la obra. Duke, a su vez, subcontrató a CE para que colaborara en las labores de diseño y construcción del proyecto. Esta última, CE, era subsidiaria de una corporación que luego fue adquirida por otra corporación denominada Alstom Power. Entonces, Alstom Power, adquirió el subcontrato suscrito inicialmente por Duke y CE. Posteriormente lo cedió a su subsidiaria API.

Posteriormente, API y CE subcontrataron a la parte recurrida (JR), para que brindara sus servicios de instalación de materiales de aislamiento y cubierta en el proyecto. Como resultado de la negociación entre estas partes, se aceptó la propuesta o cotización de JR de realizar las labores que se le solicitó por un precio alzado. Luego, ante el alegado incumplimiento de pago por parte de API y CE por los trabajos contratados y realizados, la parte recurrida (JR) optó por cursar una reclamación escrita dirigida directamente a AES y Duke (dueño de la obra y contratista general respectivamente).

JR adujo en la demanda que la falta de pago se dio desde agosto del 2002. Indicó también que notificó a AES y a Duke del incumplimiento con sus pagos en sendas cartas de 3 de diciembre de 2002 y 1 de mayo de 2003. De los referidos documentos se desprende además que JR les detalló las partidas alegadamente adeudádasle, y también, les advirtió sobre sus gestiones infructuosas de cobro a CE. Más aún, en la primera misiva, JR incluyó la siguiente solicitud:

*"We, J.R. Insulation Sales and Service, Inc., request that you withhold sums from the amounts that you may owe Combustion Engineering Caribe Inc., or are owed on the above referenced project to protect our interest as is required by the Puerto Rico Civil Code (Law)."*

Así pues, en su demanda, JR alegó que AES, como dueño de la obra, le respondía directamente en virtud del Artículo 1489 del Código Civil de Puerto Rico, 31 L.P.R.A. §4130. ■ Añadió que Duke también le era responsable por ser el contratista principal de la obra en cuestión.

Luego de varias incidencias procesales, Duke y AES contestaron la demanda. Posteriormente, presentaron sendas mociones en solicitud de sentencia sumaria. Duke presentó la suya el 15 de febrero de 2006. En su escrito indicó que no había duda de que al amparo del referido Artículo 1489 del Código Civil, JR podía reclamarle el pago que API (y CE) debió hacerle. No obstante, añadió que la reclamación de JR estaría limitada a las cantidades que Duke le adeudara a API al momento de recibir la reclamación de JR. Pero sostuvo que la reclamación de JR no podía prosperar porque no le debía nada a API. Indicó que lo anterior tenía base en un acuerdo transaccional que suscribió con API como resultado de un pleito que trabó en contra de esta última.

De acuerdo a Duke, mediante el referido acuerdo, API reconoció que Duke no le adeudaba cantidad alguna. Coligió entonces que por lo anterior, no había cantidad alguna que Duke pudiera pagarle a JR. El referido acuerdo

tendría efecto desde el 22 de septiembre de 2005. Como ha explicado posteriormente Duke (en su escrito de *certiorari*), API estuvo de acuerdo en que no tenía reclamación alguna sobre cantidades de dinero que le hubieran sido retenidas por Duke. Por último, solicitó la desestimación de la demanda incoada en su contra. Por su parte, JR presentó una moción en oposición.

En atención a los argumentos de las partes, el TPI denegó la solicitud de sentencia sumaria de Duke. En su dictamen, tomó cuenta de que en apoyo de su contención, Duke aportó unos documentos en sobre sellado a los que se refirió como confidenciales, respecto a los cuales pidió que no formaran parte del expediente público del caso. También tomó cuenta del mencionado acuerdo transaccional al que hizo referencia Duke. Sobre el particular, trajo a colación la posición de JR a los efectos de que ésta no participó en el referido acuerdo transaccional. Se advirtió que la solicitud de sentencia sumaria la fundamentó Duke principalmente en el contenido y efecto de lo convenido en el referido acuerdo.

También, el TPI tomó cuenta de la petición que hizo JR de que Duke produjera documentos acreditativos de los pagos que hubiera efectuado a API o a CE posterior al 3 de diciembre de 2002, así también de los pagos que hubiera recibido Duke por parte de AES posterior a la referida fecha. Por último, el TPI dispuso que dado el matiz de confidencialidad que le atribuyó Duke a los acuerdos transaccionales que suscribió con API, estimaba meritorio auscultar la figura de contrato en daño de tercero. También, ordenó a Duke producir los documentos que solicitó JR.

De otra parte, AES presentó su moción en solicitud de sentencia sumaria el 8 de mayo de 2006. En síntesis, alegó que al momento en que JR le hizo su primera reclamación de pago, AES no le debía cantidad alguna a Duke. Adujo que de proceder la reclamación de JR, esta última sólo tendría derecho a las sumas que AES le adeudara al contratista principal de la obra, a saber, Duke, al momento de realizada la primera reclamación. Agregó que para el 2002, más bien era Duke quien le debía a AES por razón de multas e incumplimientos en los que incurrió el primero. También indicó que toda la situación fue objeto de un acuerdo transaccional de 31 de marzo de 2003 que concluyó una acción que trabó AES contra Duke. Mediante el referido acuerdo, se estipuló que AES no adeudaba cantidad alguna a Duke, mas Duke se comprometía a pagar una suma millonaria a AES.

Esta información fue incluida también en una declaración jurada que suscribió un oficial financiero de AES. Dicho documento fue anejado a la moción de sentencia sumaria. AES aseguró que la carta de 3 de diciembre de 2002 fue la primera reclamación que recibió de JR en relación a deuda alguna por trabajos realizados y no pagados como parte del proyecto del que era dueño. No obstante lo anterior, la solicitud de AES fue denegada por el TPI mediante resolución de 19 de junio de 2006.

En el referido dictamen, el TPI tomó cuenta de la posición de AES, a los efectos de que, alegadamente, al 3 de diciembre de 2002 nada le adeudaba a Duke, sino todo lo contrario, que Duke le adeudaba grandes sumas de dinero a aquélla. También, advirtió la contención de AES respecto a que la primera reclamación por parte de JR la recibió en la referida fecha (así incluso se hizo constar en declaración jurada suscrita por un oficial de AES).

No obstante, el TPI trajo a colación la existencia de una carta de 30 de septiembre de 2002 que envió JR a AES. Esta carta la anejó JR a una moción suya en oposición a solicitud de sentencia sumaria. Tras examinar la referida carta y las firmas y anotaciones que aparecen en manuscrito allí, el TPI concluyó que AES y Duke recibieron copia de la misma. Añadió el TPI que la declaración jurada suscrita por el oficial de AES resultaba una inherentemente increíble y contradictoria.

Por otro lado, el TPI también tomó cuenta del argumento de JR, a los efectos de que en cierto párrafo contenido en el acuerdo transaccional suscrito por Duke y API, se podía inferir que Duke sí tenía una deuda con API al menos hasta el 9 de octubre de 2002. Luego de analizar el fragmento en cuestión, y tomando en cuenta la carta de 30 de septiembre de 2002, el TPI concluyó que esta prueba documental era suficiente para controvertir

los hechos y derrotar las solicitudes de sentencia sumaria que presentaron Duke y AES.

De estas determinaciones, acudieron ante nos Duke y AES en solicitud de revisión. Tomando en cuenta lo anterior, esbozamos el derecho aplicable al asunto traído ante nuestra atención.

## II

La Regla 36 de Procedimiento Civil preceptúa lo referente a la sentencia sumaria. El propósito principal de la moción de sentencia sumaria es propiciar la solución justa, rápida y económica de litigios civiles que no presentan controversias genuinas de hechos materiales; por lo tanto, no ameritan la celebración de un juicio en su fondo, ya que lo único que resta es dirimir una controversia de derecho. Utilizada de forma apropiada, la contribuye a descongestionar los calendarios judiciales. *Vera Morales v. Bravo Colón*, **2004 J.T.S. 40**.

La Regla 36.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36.2, permite a un demandado presentar una moción, basada o no en declaraciones juradas, para que se dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación.

En lo pertinente, dispone la Regla 36.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36.3, que la sentencia solicitada se dictará inmediatamente si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, demostraren que no hay controversia real sustancial en cuanto a ningún hecho material y que como cuestión de derecho debe dictarse sentencia sumaria a favor de la parte promovente. Se añade que dicha sentencia podrá dictarse a favor o en contra de cualquier parte en el pleito.

La parte que solicita la sentencia sumaria en un pleito tiene la obligación de demostrar la inexistencia de una **controversia real sobre todo hecho material y esencial**, que a la luz del derecho sustantivo determinaría que se dicte sentencia su favor. Cuando existe controversia real en relación con hechos materiales y esenciales, no debe dictarse sentencia sumaria y cualquier duda debe resolverse en contra de la parte promovente. *Vera Morales v. Bravo Colón, supra.*

Para derrotar una moción de sentencia sumaria, la parte promovida opositora deberá presentar declaraciones juradas y documentos que pongan en controversia los hechos materiales y esenciales presentados por el promovente. No obstante, el sólo hecho de no presentar evidencia que controvierta la presentada por la parte promovente, no implica que necesariamente proceda la sentencia sumaria. *Id.* Los jueces no están constreñidos por los hechos o documentos evidenciarios que se aduzcan en la solicitud de sentencia sumaria. Deben considerar todos los documentos en autos, sean o no parte de la solicitud, de los cuales surjan admisiones hechas por las partes. *Id.*

En términos generales, al dictar sentencia sumaria, el tribunal deberá: **(1) analizar los documentos que acompañan la solicitud de sentencia sumaria y los documentos incluidos con la moción en oposición, así como aquéllos que obren en el expediente del tribunal; (2) determinar si el oponente de la moción controvirtió algún hecho material y esencial** o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. Analizados estos criterios, el tribunal no dictará sentencia sumaria cuando: (1) existen hechos materiales y esenciales controvertidos; (2) hay alegaciones afirmativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o (4) como cuestión de derecho no procede. *Id.*

**La sentencia sumaria se trata de un mecanismo procesal que permite al tribunal, en el ejercicio de su discreción, disponer del pleito sin que sea necesario celebrar un juicio o vista evidenciaria.** Claro está, el Tribunal Supremo ha enunciado que el principio rector al dictar este tipo de sentencia es el sabio discernimiento del tribunal, a los fines de evitar que se despoje a un litigante de su día en corte, principio elemental del debido

proceso de ley. *Rosario v. Nationwide Mutual Ins. Co.*, **2003 J.T.S. 34**; *Asociación de Pescadores de Punta Figueras v. Marina Puerto del Rey, Inc.*, **2002 J.T.S. 4**.

Por tratarse de un remedio discrecional, el uso del mecanismo de sentencia sumaria tiene que ser mesurado y **procederá sólo cuando el tribunal quede claramente convencido de que tiene ante sí documentos no controvertidos, surgiendo de los mismos que no existen controversias sobre hechos materiales y esenciales** y que, por lo tanto, lo que resta es aplicar el derecho, ya que una vista en los méritos resultaría innecesaria. *Vera Morales v. Bravo Colón, supra*.

**Una parte tiene derecho a un juicio plenario cuando existe la más leve o mínima duda en cuanto a cuáles son los hechos materiales y esenciales.** Toda duda en cuanto a la existencia de una controversia real sobre los mismos debe resolverse en contra de la parte que solicita la sentencia sumaria. El propósito de utilizar un criterio tan estricto para evaluar una moción de sentencia sumaria es que no se ponga en peligro o se lesionen los intereses de las partes. *Id.*

El tribunal apelativo utilizará los mismos criterios que el Tribunal de Primera Instancia al determinar si procede una sentencia sumaria. Sin embargo, al revisar la determinación de primera instancia, el tribunal de apelación está limitado de dos maneras: primero, sólo puede considerar los documentos que se presentaron ante el foro de primera instancia. Las partes no pueden añadir en apelación exhibits, deposiciones o affidávits que no fueron presentados oportunamente en el foro de primera instancia, ni pueden esbozar teorías nuevas o esgrimir asuntos nuevos por primera vez ante el foro apelativo; **segundo, el tribunal apelativo sólo puede determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta.** No puede adjudicar los hechos materiales y esenciales en disputa. Esa tarea le corresponde al foro de primera instancia. *Id.*

### III

Basándonos en el derecho antes discutido, concluimos que no se cometió el error señalado.

En este caso, Duke y AES fallaron en cumplir con su obligación de demostrar la inexistencia de una controversia real sobre "*todo*" hecho material y esencial. El TPI tuvo la oportunidad de analizar los documentos que acompañaron las solicitudes de sentencia sumaria de Duke y AES, junto con los documentos incluidos en las mociones en oposición que presentó la parte recurrida - JR. Como resultado de lo anterior, y en el sano ejercicio de su discreción, el TPI determinó que JR controvirtió al menos un hecho material y esencial. Siendo ello así, conforme a la doctrina discutida, el TPI decidió correctamente no dictar la sentencia sumaria.

Por nuestra parte, luego de examinar los argumentos de las partes y, además, los documentos que acompañaron con sus escritos, no vemos error en la determinación del TPI. Lo anterior, en vista de que existe una controversia genuina de hechos materiales y esenciales. En este caso, está en controversia si AES o Duke, dueño de la obra y contratista general del proyecto respectivamente, adeudaban a API (subcontratista) alguna suma al momento en que JR (subcontratado por API) realizó sus reclamaciones extrajudiciales, o incluso, al momento en que realizó su reclamación judicial en cobro de dinero al amparo del Artículo 1489 del Código Civil.

Lo anterior hace conveniente traer a colación que la doctrina relacionada a la referida disposición establece que el dueño de una obra se convierte en deudor de obreros o materialistas, dejando de serlo del contratista, desde el instante mismo en que los obreros o materialistas reclamen su acreencia del dueño de la obra, sea esa reclamación judicial o extrajudicial. *Goss, Inc. v. Dycrex Const. & Co., S.E.*, 141 D.P.R. 342, 359 (1996).

De otra parte, destacamos que los acuerdos transaccionales a los que hacen referencia AES y Duke a favor de sus contenciones, junto con las cartas suscritas y provistas por JR (que alegadamente constituyeron sus reclamaciones extrajudiciales a aquéllos), en lugar de aclarar, minan de duda el cuadro fáctico de este caso. Lo

anterior, especialmente al analizar de los referidos documentos: su contenido, naturaleza y alcance; las fechas en que fueron convenidos unos y cursadas otras; y las circunstancias bajo las cuales se llevaron a cabo.

Habiendo controversia sobre el hecho esencial que mencionamos antes, el cual es uno fundamental a la reclamación planteada por JR en su demanda, resulta inadecuada la resolución del caso mediante el mecanismo de sentencia sumaria. A juicio de este Foro, las circunstancias particulares de este caso ameritan ser dirimidas por la vía ordinaria mediante la celebración de juicio. Lo anterior, no sin antes realizar un descubrimiento de prueba cabal para así no derrotar los fines de la justicia.

Por los fundamentos que anteceden, denegamos la expedición de los autos de *certioraris* solicitado.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Mildred Ivonne Rodríguez Rivera
Secretaria Interina del Tribunal de Apelaciones

**ESCOLIO 2006 DTA 122**

**1.** El Artículo 1489 del Código Civil, 31 L.P.R.A. §4130, provee una causa de acción contra el dueño de una obra por personas que ponen trabajo y materiales en obra ajustada por contratista. En particular, el referido artículo dispone:

*"Los que ponen su trabajo y materiales en una obra ajustada alzadamente por el contratista, no tienen acción contra el dueño de ella sino hasta la cantidad que éste adeude a aquél cuando se hace la reclamación."*