El Juez Asociado Señor Rivera Pérez
emitió la opinión del Tribunal.
En esta ocasión debemos resolver si la desestimación con perjuicio de la demanda por insuficiencia en el diligen-ciamiento del emplazamiento, contra el contratista principal y a favor del dueño de la obra en un litigio por cobro de dinero, constituye un impedimento colateral por sentencia en una reclamación instada por los materialistas contra el dueño de la obra. Concluimos que no.
r — 1
En 1999, la Iglesia Católica, Apostólica y Romana de Puerto Rico, Arquidiócesis de San Juan (Iglesia), suscribió un contrato de ejecución de obra con la Constructora Mar- *143 vie, Inc. (Marvic), para la construcción del proyecto “Parro-quia San Juan de la Cruz”, en la urbanización Los Paseos en Río Piedras. Como parte del desarrollo del proyecto, Marvic contrató los servicios de C. Crespo y Asociados, y de Carmi Construction Corp. Estos, a su vez, pactaron con Puerto Rico Wire Products, Inc., ACE Forming Systems, Inc., y ACE Construction (materialistas o peticionarios) la adquisi-ción de materiales y el arrendamiento del equipo de cons-trucción para la obra.
Tras comenzar la construcción de la obra, Carmi le cursó a la Iglesia una carta en donde le reclamó el pago de $70,029.04, en vista de que Marvic no había satisfecho dicha suma por los trabajos realizados. En el ínterin, Marvic le envió a la Iglesia una factura para el pago de $97,192.35 en concepto de la labor realizada en la obra. Ante tal situa-ción y en vista de la aparente deuda que la Iglesia mante-nía con Marvic, aquélla depositó $97,192.35 en el Tribunal de Primera Instancia.
Así las cosas, la Iglesia supo que Marvic había utilizado el dinero pagado para fines no autorizados. En vista de ello, el 28 de noviembre de 2000, la Iglesia resolvió el con-trato de construcción por incumplimiento y tomó posesión de la obra. Conforme a lo anterior, la Iglesia presentó ante el foro primario una moción para retirar los fondos consig-nados y argüyó que Marvic le debía dinero. El foro prima-rio declaró “ha lugar” la moción.
Posteriormente, Carmi no les pagó a los materialistas los cánones pactados para el arrendamiento de la maqui-naria de construcción. Por ello, el 8 de agosto de 2001, los peticionarios le reclamaron extrajudicialmente a la Iglesia —como dueña de la obra— el importe no satisfecho por dicho subcontratista.
Luego de reclamarle infructuosamente a la Iglesia el importe debido, los materialistas entablaron una demanda para cobro de dinero contra Crespo, Carmi y su compañía aseguradora Seguros Triple S, y la Iglesia, entre otros. En la demanda, los materialistas reclamaron a los deman- *144 dados $96,704.25 adeudados por los materiales adquiridos a crédito y de los equipos de construcción rentados por los subcontratistas para el desarrollo de la obra. En particular, los materialistas adujeron que la Iglesia era la dueña de la obra y que les respondía según el Art. 1489 del Código Civil. (1)
Por su parte, en su contestación a la demanda, la Iglesia expuso que no les adeudaba ningún dinero a los materia-listas debido a que no había suscrito con ellos contrato alguno. En la alternativa, la Iglesia indicó que de ser res-ponsable, su responsabilidad estaba limitada al monto, si alguno, que adeudase a Marvic.
Cabe señalar que el 11 de diciembre de 2002, el Tribunal de Primera Instancia emitió una sentencia parcial contra Carmi y la condenó a satisfacer $96,704.25 a los materia-listas, más una partida de $5,000 por los honorarios de abogado. Sin embargo, surge del informe de la Conferencia con Antelación al Juicio que tal dictamen no es final y firme debido a un error de forma que no fue corregido por el foro sentenciador.(2) Precisa indicar, además, que el 17 de diciembre de 2005 los peticionarios suscribieron un con-trato de transacción por $19,318.69 con Seguros Triple S, compañía afianzadora de Carmi.
Tras varios incidentes procesales, la Iglesia solicitó la desestimación sumaria de la reclamación incoada en su contra. Fundamentó su solicitud arguyendo que su respon-sabilidad hacia los materialistas estaba limitada a la suma adeudada a Marvic, contratista general de la obra. No obs-tante, la Iglesia señaló que no le adeudaba suma alguna a Marvic, sino que era éste quien le adeudaba dinero, por lo que no era responsable frente a los materialistas. En apoyo *145 a su razonamiento, la Iglesia manifestó que no había otor-gado contrato alguno con los materialistas y que éstos asu-mieron el riesgo de proveer materiales a corporaciones de-dicadas a la construcción.(3)
En atención a lo anterior, los materialistas presentaron una oposición a la solicitud de sentencia sumaria presen-tada por la Iglesia. En esencia, alegaron que no procedía dictar sentencia sumaria a favor de la Iglesia, ya que exis-tía una controversia de hechos, ya que desde el momento en que le reclamaron extrajudicialmente a la Iglesia, ésta le respondía por la cantidad adeudada según el Art. 1489 del Código Civil, supra. Indicaron, además, que cuando la Iglesia resolvió el contrato de construcción suscrito con Marvic, permanecieron en el proyecto los materiales y el equipo de construcción, que no fueron devueltos con pre-mura a pesar de los múltiples requerimientos realizados.(4)
Mientras todo esto sucedía, Marvic presentó una acción de cobro de dinero por la obra realizada y no pagada contra la Iglesia. No obstante, la demanda fue archivada con per-juicio por insuficiencia en el diligenciamiento del emplazamiento. Tal determinación advino final y firme, después que el Tribunal de Apelaciones desestimó el re-curso de apelación presentado por falta de jurisdicción.
Así las cosas, el Tribunal de Primera Instancia denegó la solicitud de sentencia sumaria presentada por la Iglesia. Inconforme con este dictamen, la Iglesia recurrió ante el Tribunal de Apelaciones y sostuvo que procedía dictar la sentencia sumaria a su favor. Dicho foro revocó y deter-minó que, en el pleito desestimado con perjuicio contra Marvic, se adjudicó que éste no tenía acreencia alguna que reclamar a la Iglesia, por lo que era forzoso concluir que la *146 Iglesia nada debía a los materialistas al amparo del Art. 1489 del Código Civil, supra.
Dicho de otro modo, el foro apelativo intermedio resolvió que la desestimación con perjuicio en el caso instado por Marvic contra la Iglesia constituye impedimento colateral por sentencia en la causa de acción entablada por los ma-terialistas contra la Iglesia. Según lo anterior, el Tribunal de Apelaciones dictó sentencia sumaria a favor de la Igle-sia para desestimar con perjuicio la reclamación instada por los materialistas.
Insatisfechos con tal dictamen, los materialistas acuden ante nos mediante un recurso de apelación y sostienen que el foro apelativo intermedio cometió los errores siguientes:
Cometí [ó] grave error de derecho el Tribunal de Apelaciones al dictar sentencia, mediante la cual desestimfó] y archivfó] con peijuicio la causa de acci[ó]n incoada por las partes de-mandantes contra la (“Iglesia”).
Cometí [ó] grave error de derecho el Tribunal de Apelaciones al dictar sentencia sumaria parcial, obviando el texto claro del Art[í]culo 1489 del C[ó]digo Civil de Puerto Rico, 31 L.P.R.A. 4130.
Cometí [ó] grave error de derecho el Tribunal de Apelaciones al dictar sentencia sumaria parcial, existiendo evidente con-troversia de hechos en cuanto a los hechos materiales y perti-nentes del litigio.
Cometí [ó] 668grave error de derecho el Tribunal de Apela-ciones al concluir que dos (2) sentencias previas, dictadas en acciones totalmente ajenas a las partes demandantes-apelan-tes, y en las cuales estas no fueron parte, constituyen un [sic] impedimento colateral insalvable a la causa de acci[ó]n ins-tada en el presente caso. Recurso de apelación, pág. 4.
Antes de que expidiéramos el recurso, el tribunal a quo celebró una vista de conferencia con antelación al juicio. Como resultado de lo anterior y en vista de que el litigio no estaba paralizado, el foro primario dictó sentencia parcial en la que le ordenó a los codemandados Miguel A. Crespo Arroyo, C. Crespo y Carmi Construction pagar $77,385.56 *147 a los materialistas.(5) Respecto a la causa de acción incoada contra la Iglesia, el representante legal de los peticionarios solicitó que se mantuviera en suspenso hasta tanto este Tribunal resolviera el recurso de apelación.
El caso está sometido en los méritos. Con el beneficio de la comparecencia de ambas partes, pasamos a resolver la controversia ante nuestra consideración.
II
El Art. 1489 del Código Civil, supra, dispone lo siguiente:
Los que ponen su trabajo y materiales en una obra ajustada alzadamente por el contratista, no tienen acción contra el dueño de ella sino hasta la cantidad que éste adeude a aquél cuando se hace la reclamación.
El citado artículo, de origen francés,(6) concede a los obreros y materialistas una acción directa contra el comi-tente o dueño de la obra, en el supuesto de impago por parte del contratista hacia ellos. Ahora bien, esta acción está limitada a la cantidad que el comitente adeude al con-tratista al momento de la reclamación extrajudicial o judicial instada por los materialistas o por los obreros.(7)
En varias ocasiones hemos resuelto que la acción que concede el Art. 1489 del Código Civil, supra, a los *148 materialistas y a los obreros está cimentada en considera-ciones de orden público y de índole moral, para así propi-ciar el pago pronto a éstos y evitar el enriquecimiento in-justo del dueño y del empresario a través del fraude o de la confabulación.(8) En aras de lograr el objetivo del legisla-dor, hemos decretado en innumerables ocasiones que el co-mitente o dueño de la obra se convierte en deudor de los materialistas u obreros desde el mismo instante en que és-tos le reclaman la cantidad adeudada por el contratista de la obra, ya sea mediante reclamación extrajudicial o judicial. (9)
Es menester indicar que la acción reconocida a los ma-terialistas y obreros es una excepción al principio general del derecho de obligaciones plasmado en el Art. 1209 del Código Civil, 31 L.P.R.A. see. 3374, que dispone, inter alia, que los contratos sólo producen efecto entre lo otorgantes y sus causahabientes.(10) A través del texto legal, el legisla-dor rompió con los tradicionales moldes obligacionales. Consideró que los créditos que ostentaban los materialis-tas y obreros ameritaban una protección especial y categó-rica, que no los dejara a merced del comitente y el contratista.
No obstante, es de rigor señalar que en R. Román & Cía v. J. Negrón Crespo, Inc., 109 D.P.R. 26 (1979), resolvimos —citando a Yagüez— que la acción concedida por el Art. 1489 del Código Civil, supra, no supone una modificación de la relación contractual entre comitente y contratista, y entre éste y los actores, ni su ejercicio implica la creación de una nueva relación sustantiva comitentematerialistas u obreros. Por tal razón, en Armstrong, Etc. *149 v. Inter-Amer. Builders, Inc., 98 D.P.R. 734 (1970), limitamos en dos extremos el derecho que ostentan los materia-listas y obreros contra el comitente, en concepto de trabajo o de materiales suplidos y usados en la obra.
En primer término, y según expresamos, la cuantía de la reclamación de los materialistas u obreros está circunscrita a la cantidad que el comitente le adeude al contratista según el contrato de construcción, al momento en que se hace la reclamación, ya sea extrajudicial o mediante la interposición de demanda(11) En segundo término, el materialista u obrero no adquiere ante el comitente más derechos que los que tenía el contratista. Así, el monto adeudado está sujeto a la liquidación por razón de reajustes o posibles reclamaciones recíprocas que surjan entre el contratista y el comitente en relación con la obra contratada.(12) Es imperativo puntualizar que en Armstrong, Etc. v. Inter-Amer. Builders, Inc., supra, pág. 741, enfatizamos que tales reajustes no incluyen la variación del precio del contrato de construcción por convenio privado entre el contratista y el comitente en peijuicio de los materialistas u obreros.(13)
Al analizar esta disposición legal, debemos tener presente que la acción derivada del Art. 1489 del Código Civil, supra, es una acción directa a favor de los materialistas y obreros, y no se trata de una acción subrogatoria al amparo del Art. 1064 del Código Civil.(14) Así, los materialistas y obreros no tienen que realizar una excusión previa *150 de los bienes del deudor principal como antesala a la acción directa contra el comitente.
Luego de delinear la normativa sobre el contrato de eje-cución de obra, la solución adecuada de esta controversia requiere que analicemos la doctrina de cosa juzgada y su modalidad, el impedimento colateral por sentencia. Esto, con el fin de determinar si la desestimación con perjuicio, en el pleito instado por Marvic contra la Iglesia, constituye un impedimento colateral por sentencia en la acción enta-blada por los materialistas contra la Iglesia.
I — I HH > — !
El Art. 1204 de nuestro Código Civil,(15) consagra la doctrina de cosa juzgada, de raigambre romana, en nuestro ordenamiento jurídico. El artículo dispone, en lo pertinente, lo siguiente:
Contra la presunción de que la cosa juzgada es verdad, sólo será eficaz la sentencia ganada en juicio de revisión.
Para que la presunción de cosa juzgada surta efecto en otro juicio, es necesario que entre el caso resuelto por la sentencia y aquél en que ésta sea invocada, concurra la más perfecta identidad entre las cosas, las causas, las personas de los liti-gantes y la calidad con que lo fueron.
Se entiende que hay identidad de personas siempre que los litigantes del segundo pleito sean causáhabientes de los que contendieron en el pleito anterior, o estén unidos a ellos por vínculos de solidaridad o por los que establece la indivisibili-dad de las prestaciones entre los que tienen derecho a exigir-las u obligación de satisfacerlas. 31 L.P.R.A. see. 3343.
El ilustre tratadista español Manresa define la doctrina de cosa juzgada como “lo ya resuelto por fallo firme de un Juez o Tribunal competente, y lleva en sí la *151 firmeza de su irrevocabilidad”.(16) El efecto inexorable de la doctrina de cosa juzgada es que la sentencia decretada en un pleito anterior impide que, en un pleito posterior, se litiguen entre las mismas partes y sobre la misma causa de acción y cosas, las cuestiones ya litigadas y adjudicadas, y aquellas que pudieron haberlas sido y adjudicadas con pro-piedad en la acción previa.(17)
En reiteradas ocasiones hemos determinado que la aplicación de la doctrina de cosa juzgada es provechosa y necesaria para la sana administración de la justicia. A través de la doctrina de cosa juzgada, se promueve el interés del Estado en ponerle punto final a los litigios, de manera que éstos no se eternicen y se le dé la debida dignidad a las actuaciones de los tribunales.(18) De otra parte, mediante esta doctrina se protege a los ciudadanos de las molestias y vicisitudes que supone litigar dos veces la misma causa de acción o aquellas que pudieron haberse litigado en esta ocasión.(19) De lo anterior podemos colegir que el propósito de la doctrina de cosa juzgada es “impartirle finalidad a los dictámenes judiciales, de manera que las resoluciones contenidas en éstos concedan certidumbre y certeza a las partes en el litigio”.(20)
En aras de que el litigante pueda invocar exitosamente la defensa de cosa juzgada, es preciso que, entre el caso resuelto por la sentencia y en el caso que se invoca ésta, concurra la más perfecta identidad entre las cosas, las causas, los litigantes y la calidad con que lo fueron.(21) *152 No obstante, en ciertas ocasiones hemos declinado aplicar la defensa de cosa juzgada, aun cuando concurren estos requisitos, para evitar una injusticia o cuando se plantean consideraciones de interés público.(22) Ahora bien, en Parri-lla v. Rodríguez, supra, decretamos que no se favorece la aplicación liberal de excepciones a la doctrina de cosa juz-gada puesto que se puede afectar la finalidad de las con-troversias adjudicadas y, por ende, el buen funcionamiento del sistema judicial.
Por otra parte, hemos reconocido en nuestro acervo jurídico la figura del impedimento colateral por sentencia como una modalidad de la doctrina de cosa juzgada. El impedimento colateral por sentencia “surte efectos cuando un hecho esencial para el pronunciamiento de una sentencia se dilucida y [se] determina mediante sentencia válida y final. ... Tal determinación es concluyente en un segundo pleito entre las mismas partes, aunque estén involucradas causas de acción distintas”.(23) (Énfasis suprimido.) Es decir, el impedimento colateral por sentencia impide que se litigue en un pleito posterior un hecho esencial que fue adjudicado mediante sentencia final en un litigio anterior. No obstante, a diferencia de la doctrina de cosa juzgada, la aplicación de la figura de impedimento colateral por sentencia no exige la identidad de causas. Esto es, que la razón de pedir, plasmada en la demanda, sea la misma en ambos litigios.(24)
Al igual que la doctrina de cosa juzgada, el propósito de la figura del impedimento colateral por sentencia *153 es promover la economía procesal y judicial, y amparar a los ciudadanos del acoso que necesariamente conlleva liti-gar en más de una ocasión hechos ya adjudicados.
En A & P Gen. Contractors v. Asoc. Caná, supra, tuvimos la oportunidad de analizar y examinar, la figura del impedimento colateral por sentencia. En esa ocasión expresamos que el impedimento colateral por sentencia se manifiesta en dos modalidades. La modalidad defensiva le permite al demandado argumentar la defensa de impedimento colateral por sentencia para impedir la litigación de un asunto presentado y perdido por el demandante en un pleito anterior frente a otra parte. De otro lado, la modalidad ofensiva es articulada por el demandante en un litigio posterior para impedir que el demandado relitigue los asuntos ya dilucidados y perdidos frente a otra parte. Como se puede apreciar, el denominador común entre ambas modalidades es que la parte afectada por la interposición del impedimento colateral ha litigado y ha perdido el asunto en el pleito anterior.(25)
Como corolario de lo anterior, es inevitable concluir que no procede la interposición de la doctrina de impedimento colateral por sentencia —ya sea en su vertiente ofensiva o defensiva— cuando la parte contra la cual se interpone no ha tenido la oportunidad de litigar previamente el asunto ni ha resultado ser la parte perdidosa en un pleito anterior.
IV
Con estos criterios en mente, pasemos a los méritos de la controversia ante nos. En vista de que los señalamientos de error articulados por los materialistas están íntima-mente relacionados, los discutiremos en conjunto.
*154 Los materialistas sostienen, en síntesis, que el Tribunal de Apelaciones erró al concluir que la desestimación con perjuicio en la acción incoada por Marvic contra la Iglesia constituye un impedimento colateral por sentencia en el litigio instado por ellos contra la Iglesia, puesto que tal desestimación respondió al diligenciamiento tardío del em-plazamiento y no fue una adjudicación en los méritos. Ar-guyen, además, que la desestimación con perjuicio en este pleito no les puede afectar su derecho a reclamar contra la Iglesia al amparo del Art. 1489 del Código Civil, supra, ya que eran parte indispensable en esa acción y no fueron in-cluidos a esos efectos.
Por su parte, la Iglesia arguye en su alegato que el foro apelativo intermedio aplicó correctamente la figura del im-pedimento colateral por sentencia y apoya su posición en la procedencia de la sentencia sumaria presentada. En vista de ello, sostiene que los materialistas no controvirtieron mediante documentos el hecho medular de la controversia ante nos; a saber, que la Iglesia no adeuda cantidad alguna a ellos por los materiales suministrados en la obra. No les asiste la razón. Veamos.
Adviértase, de entrada, que el pleito entablado por Mar-vic contra la Iglesia fue desestimado con perjuicio debido a que el primero no diligenció el emplazamiento a la Iglesia en el término estatutario de seis meses. Claramente, tal desestimación obedeció al mandato de la Regla 4.3(b) de Procedimiento Civil y no fue una adjudicación en los méritos.(26) Es decir, en ese litigio no se adjudicó ni se pasó prueba sobre la reclamación de Marvic contra la Iglesia.
No obstante, el foro apelativo intermedio entendió que en este caso quedó resuelto que la Iglesia nada adeudaba a *155 Marvic. En vista de lo anterior y dado que la reclamación de los materialistas está circunscrita a la cantidad que la Iglesia le adeude a Marvic, concluyó que la determinación en el litigio, constituye un impedimento colateral por sen-tencia en el caso ante nos.
A nuestro juicio, la interpretación del foro apelativo in-termedio es errónea. Como regla general, la adjudicación de un hecho esencial en un pleito anterior constituye un impedimento colateral por sentencia en un pleito posterior en que se trate de litigar tales hechos. No obstante, y se-gún expresamos en el acápite anterior, la doctrina de im-pedimento colateral por sentencia no surtirá efectos cuando la parte contra la cual se ofrece la sentencia previa: (1) no ha tenido la oportunidad de litigar previamente el asunto y (2) no ha resultado ser la parte perdidosa en un litigio anterior.
En este caso, no procede aplicar la doctrina de impedi-mento colateral por sentencia en su modalidad defensiva, contra los materialistas, ya que no están presentes los re-quisitos mencionados. En primer lugar, los materialistas no fueron parte en el pleito entablado por Marvic contra la Iglesia, por lo que no tuvieron la oportunidad de litigar y presentar prueba sobre la procedencia de su acreencia contra la Iglesia. Por lo tanto, la sentencia que la Iglesia ar-guye que constituye un impedimento colateral, no fue una adjudicación en los méritos de la reclamación de los materialistas. Evidentemente, en este caso, no cabe hablar de impedimento colateral por sentencia.
En segundo lugar, tampoco está presente el segundo re-quisito para la aplicación de la doctrina de impedimento colateral. Claramente los materialistas no resultaron ser la parte perdidosa en la causa de acción entablada por Marvic contra la Iglesia. Estos ni siquiera fueron parte en el procedimiento judicial, el cual —como ya dijimos— fue desestimado con perjuicio por el incumplimiento de Marvic con la Regla 4.3(b) de Procedimiento Civil, 32 L.P.R.A. Ap. *156 III. Además, debido a la desestimación con perjuicio de este pleito, nunca se determinó si Marvic tenía alguna acreen-cia contra la Iglesia.
Según lo anterior, el caso de autos no supone una reliti-gación de hechos adjudicados y tampoco presenta el riesgo de dos fallos contradictorios. Téngase presente que la ac-ción que el Art. 1489 del Código Civil, supra, les otorga a los materialistas es una medida de protección social y “no podemos frustrar la justicia en nombre de reglas que se originaron con el propósito de facilitar su adminis-tración”.(27)
Finalmente, no podemos suscribir el argumento de la Iglesia a los efectos que procede dictar sentencia sumaria a su favor. La Iglesia incorporó a su solicitud de sentencia sumaria dos declaraciones juradas suscritas por el Ledo. Luis F. Hernández y el Sr. Ornar Santamarina Dorta —participantes activos en la construcción de la parro-quia— quienes dieron fe que ésta no le adeuda suma al-guna a Marvic.
Al examinar el expediente del caso, nos percatamos que existen tres copias de cartas cursadas por los materialistas a la Iglesia, en donde le reclaman el pago de los materiales provistos en la construcción. Por lo tanto, concluimos que existe una controversia sobre hechos esenciales y materia-les, por lo que no procede dictar sentencia sumaria a favor de la Iglesia. Así lo entendió correctamente el foro primario.
V
Por los fundamentos expuestos, se revoca en su totali-dad la determinación del Tribunal de Apelaciones. Devol-vemos este caso al Tribunal de Primera Instancia para que éste celebre una vista en su fondo de naturaleza evidencia- *157 ria y determine si, al momento cuando los materialistas realizaron la reclamación extrajudicial a la Iglesia, ésta adeudaba algún dinero a Marvic y, por ende, a ellos.

 31 L.P.R.A. sec. 4130. El artículo dispone lo siguiente:
“Los que ponen su trabajo y materiales en una obra ajustada alzadamente por el contratista no tienen acción contra el dueño de ella sino hasta la cantidad que éste adeude a aquél cuando se hace la reclamación.”

 Apéndice del Recurso de apelación ante el Tribunal de Apelaciones, págs. 6-16.

 Apéndice del Recurso de apelación, págs. 26-32. Entre los documentos que acompañó la Iglesia para sustentar la moción de sentencia sumaria se encuentran dos declaraciones juradas suscritas por el Ledo. Luis F. Hernández y el Sr. Ornar Santamarina Dorta, quienes dieron fe que la Iglesia no le adeuda dinero a Marvic. Ambos se desempeñan como participantes activos en la construcción de la parroquia.

 Íd., págs. 33-35.

 Conviene señalar que, luego de analizar detenidamente el expediente del caso, no surge que la sentencia haya sido satisfecha por Carmi.

 El Código Civil francés dispone lo siguiente: “los albañiles, carpinteros, y otros obreros que se hayan empleado en la construcción de un edificio o de otras obras hechas por precio alzado, no tienen una acción contra aquel para el cual se han hecho las obras más que hasta la cantidad por al que éste resulte deudor para con el contratista, en el momento que aquéllos interpongan su acción.” Para una discusión más detallada sobre el origen y la evolución del referido artículo, véanse: R. de Ángel Yagüez, Los créditos derivados del contrato de obra: su protección legal en la legisla-ción civil, Madrid, Ed. Tecnos, 1969; Q.M. Scaevola, Código Civil, 2da ed., Madrid, Ed. Reus, 1951, T. XXIV, Vol. II, págs. 157-173.

 Véase Goss, Inc. v. Dycrex Const. & Co., S.E., 141 D.P.R. 342 (1996).

 Véanse: C. Armstrong e Hijos v. Díaz, 95 D.P.R. 819, 824-825 (1968); Amer. Surety Co. v. Tribunal Superior, 97 D.P.R. 452, 455 (1969).

 Véanse: Amer. Surety Co. v. Tribunal Superior, supra; C. Armstrong e Hijos v. Díaz, supra; R. Román & Cía v. J. Negrón Crespo, Inc., 109 D.P.R. 26 (1979); Goss, Inc. v. Dycrex Const. & Co., S.E., supra.

 Véanse, además: Goss, Inc. v. Dycrex Const. & Co., S.E., supra; Román & Cía v. J. Negrón Crespo, Inc., supra.

 En Goss, Inc. v. Dycrex Const. & Co., S.E., supra, resolvimos que el dueño de la obra se convierte en deudor de los materialistas u obreros desde el instante mismo en que éstos le reclaman su acreencia, ya sea mediante una reclamación extrajudicial o judicial.

 Íd.

 Íd.

 31 L.P.R.A. see. 3028. Este artículo dispone lo siguiente: “Los acreedores, después de haber perseguido los bienes de que esté en posesión el deudor para rea-lizar cuanto se les debe, pueden ejercitar todos los derechos y acciones de éste con el mismo fin, exceptuando los que sean inherentes a su persona; pueden también im-pugnar los actos que el deudor haya realizado en fraude de su derecho.” íd.

 31 L.P.R.A. sec. 3343.

 J.M. Manresa, Comentarios al Código Civil Español, 6ta ed., Madrid, Ed. Reus, 1967, T. VIII, Vol. II, pág. 278.

 Méndez v. Fundación, 165 D.P.R. 253 (2005); Pagán Hernández v. U.P.R., 107 D.P.R. 720, 732-733 (1978); Mercado Riera v. Mercado Riera, 100 D.P.R. 940, 950 (1972).

 Pérez v. Bauzá, 83 D.P.R. 220 (1961).

 Pérez v. Bauzá, supra; Parrilla v. Rodríguez, 163 D.P.R. 263 (2004).

 Parrilla v. Rodríguez, supra, pág. 268.

 Art. 1204 del Código Civil, supra; Méndez v. Fundación, supra.

 Véanse: Parrilla v. Rodríguez, supra; Pérez v. Bauza, supra; Meléndez v. García, 158 D.P.R. 77 (2002); Mun. de San Juan v. Bosque Real, S.E., 158 D.P.R. 743 (2003); Pagán Hernández v. U.P.R., 107 D.P.R. 720 (1978).

 A & P Gen. Contractors v. Asoc. Caná, 110 D.P.R. 753, 762 (1981).

 Véase Rodríguez Rodríguez v. Colberg Comas, 131 D.P.R. 212, 219 (1992). Sobre la identidad de causas, señalamos en A & P Gen. Contractors v. Asoc. Caná, supra, pág. 765, que en el contexto particular de la doctrina de cosa juzgada y del impedimento colateral por sentencia, tal requisito significa el fundamento capital, es decir, el origen de las acciones o excepciones planteadas y resueltas.

 A & P Gen. Contractors v. Asoc. Caná, supra, págs. 758-761.

 ei inciso (b) de la Regla 4.3 dispone lo siguiente: “El emplazamiento será diligenciado en el término de seis (6) meses de haber sido expedido. Dicho término sólo podrá ser prorrogado por un término razonable a discreción del tribunal si el demandante demuestra justa causa para la concesión de la prórroga y solicita la misma dentro del término original. Transcurrido el término original o la prórroga sin que el emplazamiento hubiere sido diligenciado, se tendrá a la parte adora por de-sistida, con perjuicio”. (Enfasis suplido.) 32 L.P.R.A. Ap. III.

 Millán v. Caribe Motors Corp., 83 D.P.R. 494, 508 (1961).